IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03004-WJM-KLM

ANTWAN OCIE GATLIN,

Plaintiff,

v.

MARY HOLDRIDGE, Correctional Officer.
STEVE BROWN, SR., Investigator,
JESSICA JARAMILLO, Correctional Officer,
STEVE BROWN, JR., Assistant Warden.
CHAD PENNER, Case Manager,
CHRIS DURGA, Correctional Officer,
PAUL DOSE, Shift Supervisor,
LARRY COX, Chief of Security,
JACK CHAPMAN, Hearings Disciplinary Officer, and
ELLEN HAARMANN, Correctional Counselor,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** [Docket No. 24; Filed April 17, 2012], filed by Defendants Steve Brown, Sr. (“Brown, Sr.”), Jessica Jaramillo (“Jaramillo”), Steve Brown, Jr. (“Brown, Jr.”), Chris Durga (“Durga”), Larry Cox (“Cox”), Jack Chapman (“Chapman”) and Ellen Haarmann (“Haarmann”) and on the **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** [Docket No. 38; Filed July 5, 2012], filed by Defendants Chad Penner (“Penner”) and Paul Dose (“Dose”). Plaintiff filed Responses to the Motions on June 8, 2012 [#32] and August 20, 2012 [#50], respectively. Defendants filed their respective Replies on June 20, 2012 [#37]

and on August 29, 2012 [#52].

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motions have been referred to this Court for a recommendation regarding disposition. The Court has reviewed the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motions [#24, #38] be **GRANTED**, and that Plaintiff's Amended Complaint [#13] be **DISMISSED without prejudice**.

## I. Background

Plaintiff is a prisoner presently incarcerated at Trinidad Correctional Facility. *Notice* [#65]. Plaintiff was incarcerated at Bent County Correctional Facility ("BCCF") at all times relevant to this litigation. *See Am. Compl.* [#13] at 6-10. Plaintiff brings this action against nine Defendants:[1] (1) Brown, Sr., "Investigator;" (2) Jaramillo, "Correctional Officer;" (3) Brown, Jr., "Assistant Warden;" (4) Penner, "Case Manager;" (5) Dose, "Shift Supervisor;" (6) Cox, "Chief of Security;" (7) Chapman, "Hearings Disciplinary Officer;" (8) Haarmann, "Correctional Officer;" and (9) Durga, "Correctional Officer." *Id.* at 1-4. In short, Plaintiff alleges in his Amended Complaint that Defendants violated his First and Fourteenth Amendment rights ("Claim One") and his Eighth Amendment rights ("Claim Two"). *Id*. at 8-10. Each claim appears to be composed of two separate incidents.

In connection with Claim One, Plaintiff asserts that on May 22, 2009, while housed

[1] A Recommendation [#60] is currently pending to dismiss a tenth Defendant, Mary Holdridge ("Holdridge"), due to Plaintiff's failure to serve her with the Summons and Amended Complaint. Defendant Holdridge is not a party to the pending Motions. Three other Defendants, Anthony A. DeCesaro, Barry Sloan, and John Doe, were dismissed from this action on February 15, 2012 [#14].

at BCCF, he was placed in punitive segregation after telling Defendant Dose that Plaintiff would pray for him. *See id.* at 6. Defendant Dose ordered Plaintiff placed in restraints and, when Plaintiff asked if he was going to segregation for being Christian, Dose allegedly answered, "Yup." *Id.* Plaintiff contends that he informed Defendant Dose that he was violating his rights and that Plaintiff could take legal action against him, to which Defendant Dose replied, "Jump in line." *Id.* Plaintiff avers that Defendant Dose then falsified a misbehavior report that led to a disciplinary hearing under the Code of Penal Discipline ("COPD"), which in turn resulted in Plaintiff's confinement, "keeplock," punitive segregation, and a loss of good-time credits and ordinary liberties, all without Plaintiff's being permitted to call witnesses or request and examine evidence. *Id.*

Also in connection with Claim One, Plaintiff asserts that on September 14, 2010, Defendant Haarmann issued an allegedly false write-up.[2] *Id.* at 8. Plaintiff contends that, based on this write-up, he was deprived of ordinary liberties in prison life and denied due process protections.[3] *Id*.

The first incident in connection with Claim Two occurred on December 16, 2009, when Plaintiff was allegedly attacked by an unstable cell mate, George Belcher ("Belcher").

---

[2] Plaintiff states that this happened "after being threatened by" Defendant Brown, Sr., but it is unclear whether Plaintiff is asserting that Defendant Brown, Sr. had threatened Plaintiff or whether Defendant Brown, Sr. had threatened Defendant Haarmann into issuing a false write-up.

[3] Although Plaintiff's Amended Complaint itself contains no other details about this incident, a grievance submitted by Plaintiff as an attachment to the Amended Complaint states, in part: "Haarmaan [sic] harrassed [sic] me for three days straight by hovering over my shoulders as I ate breakfast and lunch, then fabricated a report maliciously because of a disagreement." *Am. Compl.* [#13] at 20. He also states that, at the hearing in connection with this write-up, "Lt. Chapman displayed conduct and violation of due process by intimidating me ass [sic] a witness by yelling, using abrasive language, and addressing me and inmate Daniels out of our names [sic]. Also by not reviewing evidence or taking proper steps for due process, not only in COPD, but amendments 8 and 14." *Id.*

*Id.* at 9. Plaintiff asserts that he had previously notified the staff of issues between Belcher and himself, but that, regardless, Defendants housed the two together three separate times. *Id.* Plaintiff states that when he was assaulted by Belcher on December 16, 2009, Plaintiff made numerous calls for assistance over the intercom. *Id.* During the third intercom call, Plaintiff says that he yelled that Belcher had a razor and that Belcher said, "I told yall I was going to kill him!" *Id*. Plaintiff avers that Defendant Mary Holdridge ("Holdridge") wantonly and recklessly disregarded his safety when she did not respond to the first six calls for help made by Plaintiff, during which time Belcher was allegedly attempting to kill Plaintiff.[4] *Id.* On Plaintiff's third call, Defendant Holdridge allegedly responded, "What's going on up there?" in her "usual playful tone," but that even after Plaintiff yelled for help, she either hung up or sat and listened, doing nothing. *Id.* at 10. Plaintiff alleges that only on the seventh call for help, in which he threatened to press charges, did Defendant Durga come to his cell. *Id.* at 9.

Plaintiff first started to explain the situation to Defendant Durga, but Captain Abdullah[5] took over, shouting orders to Belcher for nearly twenty minutes, telling him to drop his weapon and back away from Plaintiff. *Id*. Plaintiff alleges that when he and Belcher were both compliant and spread eagle on their stomachs, Defendants Brown Jr. and Penner used force on him in excess of that necessary for the security situation. *Id.* Plaintiff contends that his neck was spun and his whole body was twisted. *Id*. Plaintiff also states that Defendant Brown Sr. kicked him while he was lying on the ground and held him

---

[4] Plaintiff states that about twenty minutes elapsed between each call. *Am. Compl.* [#13] at 9.

[5] Captain Abdullah is not a Defendant in this matter.

upside down with his neck supporting all of his body weight. *Id.* Defendant Penner allegedly kicked Plaintiff while he was in restraints and on his knees and pushed Plaintiff's head into a brick wall. *Id.* Plaintiff also avers that Defendant Jaramillo later confessed that she and others were in the tower during Belcher's attack on Plaintiff and that they knew something was happening there. *Id.* at 10. Defendant Jaramillo allegedly recorded the use of unnecessary force by some of the other Defendants on the facility's camcorder. *Id*.

In connection with the second incident under Claim Two, Plaintiff states that Defendant Brown Sr. was responsible for all housing assignments and was the person who "must be contacted for protected conduct."[6] *Id.* Plaintiff contends that Defendant Brown Sr. threatened him and demonstrated his position of power by housing Plaintiff in an open barracks with sickly and mentally disturbed inmates. *Id*. One of these inmates was a sleepwalker who, on February 9, 2010, urinated next to Plaintiff's bed in his sleep. *Id.* Defendant Brown Sr. allegedly later stated that neither this incident nor Belcher's attack ever occurred. *Id.*

In the pending Motions, Defendants first contend that Plaintiff's First and Fourteenth Amendment claims (Claim One) are barred as a matter of law because he failed to exhaust his state court remedies pursuant to Colo. R. Civ. P. 106(a)(4).[7] *See Motions* [#24, #38] at 3. Second, Defendants assert that Plaintiff's Claim One is barred by *Heck v. Humphrey,* 512 U.S. 377 (1994), because Plaintiff failed to allege that his COPD convictions were

---

[6] Plaintiff does not clarify precisely what he means by this statement.

[7] Defendants Penner and Dose were served significantly later than the other Defendants and filed a separate Motion to Dismiss [#38]. However, their arguments are identical or similar to the arguments made by the other Defendants in their Motion to Dismiss [#24]. Therefore, the Court addresses the arguments made in the two Motions at the same time.

invalidated. *Id*. at 5. Third, Defendants argue that Plaintiff's claims must be dismissed under the Prison Litigation Reform Act ("PLRA") for failure to exhaust administrative remedies.[8] *See* [#24] at 6-8; [#38] at 6-8. Finally, Defendants aver that Plaintiff states no cognizable constitutional violation of his First, Eighth, or Fourteenth Amendment rights. *Id*. at 8.

## II. Standard of Review

### A. Fed. R. Civ. P. 56

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine

---

[8] On October 19, 2012, the Court issued an Order [#63] informing the parties that it would convert Defendants' Motions to Dismiss on the exhaustion issue into motions for summary judgment. The Court invited the parties to submit additional evidence on or before November 8, 2012. No additional evidence was submitted by any party.

issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

**B. Fed. R. Civ. P. 12(b)(6)**

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

**C. *Pro Se* Status & Prison Litigation**

When considering Plaintiff's filings, the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

In addition, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper

federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted). As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

**III. Analysis**

The Court first addresses Defendants' arguments concerning exhaustion of administrative remedies. *See Norton v. The City of Marietta, OK*, 432 F.3d 1145, 1149-50 (10th Cir. 2005) (stating that exhaustion is mandatory and that the issue of administrative exhaustion under the PLRA must be considered before examining the merits of the plaintiff's claims). The Court then turns to the merits of Plaintiff's remaining claims pursuant to Fed. R. Civ. P. 12(b)(6).

**A. Exhaustion of Administrative Remedies**

The PLRA requires that a claim regarding prison conditions must first be exhausted before a prisoner may challenge those conditions by filing suit. *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."). Specifically, the exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007);

*Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). However, the burden is not on Plaintiff to sufficiently plead exhaustion or attach exhibits to his Second Amended Complaint proving exhaustion. *Jones*, 549 U.S. at 215. Rather, the burden is on Defendant to assert the failure to exhaust in a dispositive motion. Here, Defendant's failure to exhaust defense is analyzed pursuant to Fed. R. Civ. P. 56. As such, if the evidence presented does not create a genuine issue of material fact as to whether his claim against Defendant was properly exhausted, the Complaint must be dismissed without prejudice. *Arocho v. Lappin*, No. 07-cv-02603-REB-KLM, 2011 WL 2292187, at *8 (D. Colo. Apr. 21, 2011) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (noting that dismissal of unexhausted claims on summary judgment should be without prejudice)); *cf. Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006) (recognizing that dismissal of untimely grievance should be with prejudice), *overruled in part on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008)).

The prison facility is tasked with the responsibility of establishing grievance procedures. *Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion."). Defendants argue that Plaintiff failed to exhaust his administrative remedies because he failed to file Step 1, Step 2, and Step 3 grievances for each of his claims, as required by prison regulations concerning CDOC's grievance procedures. *See Ex. A, AR 850-04* [#24-1]. As evidence that he completed the grievance process for each of his claims, Plaintiff submitted copies of thirteen grievances along with numerous other incident statements and other forms. *See Am. Compl.* [#13] at 13-22; *Pl.'s Exs.* [#47-1] at 1-27.

**1. Claim One**

Plaintiff's First and Fourteenth Amendment claims assert that certain actions by certain Defendants resulted in prison officials conducting two COPD hearings and imposing discipline on Plaintiff, including placement in punitive segregation. However, based on the materials provided by Defendants, the grievance process is not available for review of COPD discipline or placement in segregation. *See Ex. A, AR 850-04* [#24-1] at 2 (stating that "[t]his grievance procedure may not be used to seek review of COPD convictions [or] administrative segregation placement . . . ."). As further stated in AR 850-04 § IV.A.5: "Code of Penal Discipline convictions [and] administrative segregation placements . . . have exclusive appeal procedures." *Id.* The language of the administrative regulation is clear that the grievance process is not the correct mechanism to use in review of COPD action or segregation placement, in spite of Defendants' bald assertion to the contrary. *See Motion* [#24] at 8. Plaintiff's Claim One asserts that he was wrongly accused of actions for which he was later convicted at allegedly faulty COPD hearings, and that in connection with these incidents he was placed in segregation. CDOC's regulations explicitly state that the grievance procedure is not the appropriate mechanism to address these issues.[9] On this record, therefore, the Court cannot find that there is no genuine issue of material fact or that Defendants are entitled to judgment as a matter of law due to Plaintiff's alleged failure to exhaust administrative remedies with respect to Claim One. Accordingly, the Court declines to recommend that Defendants' Motions be granted to the extent that they seek

[9] Defendants merely argue that Plaintiff failed to complete the grievance process and do not address whether he properly completed the appropriate "exclusive appeals procedures." *Motion* [#24] at 6-8. The Court therefore does not address whether Plaintiff properly exhausted CDOC's internal administrative remedies through the offender appeal process.

a determination that Plaintiff failed to exhaust administrative remedies in connection with Claim One.[10]

### 2. Claim Two

Plaintiff's second claim involves two events which allegedly occurred on December 16, 2009, and on February 9, 2010. *See Am. Compl.* [#13] at 9-10.

#### a. December 16, 2009 Incident

On December 17, 2009, Plaintiff filed a Step 1 grievance.[11] *Am. Compl.* [#13] at 18. Therein, Plaintiff explicitly discusses the events that occurred on December 16, 2009, as related in his Amended Complaint. *Id.* The Court therefore finds that Plaintiff has presented evidence that he satisfied Step 1 of the grievance process as to this incident.

On January 31, 2010, Plaintiff filed a grievance in which he complained generally of staff corruption and breach of security for inmates. *Pl.'s Exs.* [#47-1] at 22. He does not specify incidents or name names in this grievance, and it is unclear what step, if any, the grievance constitutes. *Id.* However, CDOC's response to the grievance states that, "Your grievance BC08/09-071 contains the same issue and has been processed to the Step III level. This grievance is denied on procedural grounds." *Id.* Plaintiff's Step 1 grievance for the December 16, 2009 incident states that it is Grievance Number BC 09/10-209. *Am. Compl.* [#13] at 18. Therefore, because the grievance numbers do not match and because

---

[10] **Defendants and their attorneys are warned that future frivolous assertions of this argument in similar cases will result in the imposition of sanctions.** Not every prisoner case can be defeated by knee-jerk contentions that the prisoner failed to exhaust administrative remedies.

[11] The grievance form does not specify whether it is for Step 1, Step 2, or Step 3, but it is clear for the purpose of this analysis that it is a Step 1 grievance because the conduct complained of by Plaintiff took place on December 16, 2009, the day before he signed the form. *See Am. Compl.* [#13] at 18.

there are no specific alleged facts in the January 31, 2010 grievance, the Court therefore finds that this grievance does not constitute evidence that Plaintiff satisfied the grievance process as to the December 16, 2009 incident.

The Court has examined all of the other grievances provided by Plaintiff. *See Am. Compl.* [#13] at 13-22; *Pl.'s Exs.* [#47-1] at 1-27. The Court finds that none of these other grievances provide evidence that Plaintiff satisfied Steps 2 and 3 of the grievance process regarding the December 16, 2009 incident. Because exhaustion is mandatory and unexhausted claims may not be brought in court, *Jones*, 549 U.S. at 211, and because Plaintiff has failed to present evidence creating a genuine issue of material fact as to whether this claim against Defendants was properly exhausted, this portion of his Eighth Amendment claim must be dismissed without prejudice. *See Arocho*, 2011 WL 2292187, at *8 (citing *Fields*, 511 F.3d at 1113 (noting that dismissal of unexhausted claims on summary judgment should be without prejudice)).

Accordingly, the Court **recommends** that the portion of Plaintiff's Eighth Amendment claim (Claim Two) regarding the December 16, 2009 incident be **dismissed without prejudice**.

**b. February 9, 2010 Incident**

On February 9, 2010, Plaintiff filed a Step 1 grievance.[12] *Pl.'s Exs.* [#47-1] at 3. Therein, Plaintiff explicitly discussed his cell mate's nighttime activities of sleepwalking and urination on the cell floor. *Id.* The Court therefore finds that Plaintiff has presented

---

[12] The grievance form does not specify whether it is for Step 1, Step 2, or Step 3, but it is clear for the purpose of this analysis that it is a Step 1 grievance because the form complains of similar conduct as the Step 2 grievance form that was filed by Plaintiff on March 15, 2010. *See Am. Compl.* [#13] at 18; *Pl.'s Exs.* [#47-1] at 4.

evidence that he satisfied Step 1 of the grievance process as to this incident.

On March 15, 2010, Plaintiff filed a Step 2 grievance in which he again complained of his cell mate's nighttime activities. *Pl.'s Exs.* [#47-1] at 4. The Court therefore finds that Plaintiff has presented evidence that he satisfied Step 2 of the grievance process as to this incident.

However, Plaintiff has not presented evidence that he filed a Step 3 grievance with respect to his cell mate's nighttime activities. On March 31, 2010, Plaintiff filed a Step 3 grievance. *Pl.'s Exs.* [#47-1] at 5, 24. This grievance, though, corresponds with the occurrences underlying Plaintiff's First and Fourteenth Amendment claim, which primarily concerns Defendant Dose. *See id.* The Court therefore finds that this grievance does not constitute evidence that Plaintiff satisfied the grievance process as to the February 9, 2010 incident.

The Court has examined all of the other grievances provided by Plaintiff. *See Am. Compl.* [#13] at 13-22; *Pl.'s Exs.* [#47-1] at 1-27. The Court finds that none of these other grievances provide evidence that Plaintiff satisfied Step 3 of the grievance process regarding the February 9, 2010 incident. Because exhaustion is mandatory and unexhausted claims may not be brought in court, *Jones*, 549 U.S. at 211, and because Plaintiff has failed to present evidence creating a genuine issue of material fact as to whether this claim against Defendants was properly exhausted, this portion of his Eighth Amendment claim must be dismissed without prejudice. *See Arocho*, 2011 WL 2292187, at *8 (citing *Fields*, 511 F.3d at 1113 (noting that dismissal of unexhausted claims on summary judgment should be without prejudice)).

Accordingly, the Court **recommends** that the portion of Plaintiff's Eighth Amendment

claim (Claim Two) regarding the February 9, 2010 incident be **dismissed without prejudice**.

**B. Exhaustion of State Court Remedies**

Defendants argue that Plaintiff failed to exhaust his state court remedies, as required by Colo. R. Civ. P. 106(a)(4), as to Claim One. *Motion* [#24] at 3-5.

Colo. R. Civ. P. 106(a)(4) provides for relief "[w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law." The Colorado Supreme Court has held that disciplinary actions taken by CDOC personnel against inmates under the COPD are quasi-judicial actions that are reviewable pursuant to Colo. R. Civ. P. 106(a)(4). *Butler v. Jones*, No. 10-cv-02054-BNB, 2010 WL 5014504, at *2 (D. Colo. Dec. 2, 2010) (citing *Kodama v. Johnson*, 786 P.2d 417 (Colo. 1990)). This rule also applies to CDOC decisions to place inmates in administrative segregation. *Butler*, 2010 WL 5014504, at *2 (citing *Baldauf v. Roberts*, 37 P.3d 483, 485 (Colo. App. 2001)).

Plaintiff has neither alleged in his filings nor provided ancillary evidence that he exhausted his state court remedies by obtaining judicial review of the COPD hearings and decisions to place him in segregation. Thus, the Court finds that Plaintiff failed to exhaust his mandatory state court remedies for the incidents encompassed by Claim One. Accordingly, the Court **recommends** that Plaintiff's First and Fourteenth Amendment claims (Claim One) be **dismissed without prejudice**. *See Butler*, 2010 WL 5014504, at *3 (dismissing the plaintiff's claims without prejudice where he failed to exhaust state court

remedies for his claims).

## IV. Conclusion

Based on the foregoing,

IT IS RESPECTFULLY **RECOMMENDED** that the Motions [#24, #38] be **GRANTED**, and that Plaintiff's Amended Complaint [#13] be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 21, 2012, at Denver, Colorado.

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge