IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03004-WJM-KLM

ANTWAN OCIE GATLIN,

    Plaintiff,

v.

STEVE BROWN, SR., Investigator,
JESSICA JARAMILLO, Correctional Officer,
STEVE BROWN, JR., Assistant Warden.
CHAD PENNER, Case Manager,
CHRIS DURGA, Correctional Officer,
PAUL DOSE, Shift Supervisor,
LARRY COX, Chief of Security,
JACK CHAPMAN, Hearings Disciplinary Officer, and
ELLEN HAARMANN, Correctional Counselor,

    Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment** [#153][1] (the "Motion"). Plaintiff, who proceeds in this matter as a pro se litigant,[2] filed a

---

[1] "[#153]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). This convention is used throughout the Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

-1-

Response[3] in opposition to the Motion [#160], to which Defendants filed a Reply [#164]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to this Court for a recommendation regarding disposition [#154]. The Court has reviewed the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#153] be **GRANTED**.

## I. Background

Plaintiff is presently incarcerated at Arrowhead Correctional Center in Canon City, Colorado, but he was incarcerated at Bent County Correctional Facility ("BCCF") at all times relevant to this litigation. *See Am. Compl.* [#13] at 6-10. Nine Defendants remain in this action: (1) Steve Brown, Sr., "Investigator;" (2) Jessica Jaramillo, "Correctional Officer;" (3) Steve Brown, Jr., "Assistant Warden;" (4) Chad Penner, "Case Manager;" (5) Paul Dose, "Shift Supervisor;" (6) Larry Cox, "Chief of Security;" (7) Jack Chapman, "Hearings Disciplinary Officer;" (8) Ellen Haarmann, "Correctional Officer;" and (9) Chris Durga, "Correctional Officer." *Id.* at 1-4. The only cause of action remaining is Plaintiff's claim that these Defendants violated his Eighth Amendment rights ("Claim Two").[4] *Order*

---

[3] Plaintiff titles the Response [#160] as "Cross-Motion in Opposition to Defendants['] Motion for Summary Judgment." The Court notes that this filing is clearly responsive to Defendants' Motion seeking entry of summary judgment in their favor, and is thus construed as Plaintiff's Response. More importantly, however, the deadline to file dispositive motions occurred on January 22, 2014. *Order* [#149]. Plaintiff filed this document on March 6, 2014, without seeking an extension of the dispositive motions deadline. Thus, to the extent that Plaintiff may have intended this document to be a motion, it is untimely. The Court therefore only considers this filing as a response to Defendants' Motion [#153].

[4] Plaintiff also appears to raise arguments in his Response relating to constitutional amendments that are no longer at issue in this case. *See, e.g., Response* [#160] at 8 (discussing the Fourteenth Amendment), 4 (discussing retaliation that appears to fall under the First Amendment). Plaintiff's First and Fourteenth Amendment claims were dismissed on January 17,

[#73] at 8. This claim is composed of two separate incidents.

The first incident in connection with Claim Two occurred on December 16, 2009, when Plaintiff and his cell mate, George Belcher ("Inmate Belcher"), entered into a verbal and physical altercation.[5] *See generally Debs.' Ex. A, Depo. of Pl.* [#153-1] 51-67. The second incident in connection with Claim Two occurred on February 9, 2010. Plaintiff at this time was sharing a cell with David Robinson ("Inmate Robinson"). *Id.* at 53. On February 9, Inmate Robinson began sleepwalking and urinated in their cell on some boxes located next to Plaintiff's bed. *Id.* at 54. This is the only time Inmate Robinson urinated while sleepwalking. *Id.* at 68. Plaintiff did not suffer any physical injury from this incident, although he asserts that he is a "germaphobe" and so suffered psychologically as a result of the urination next to his bed. *Id.* at 68. Plaintiff states that Inmate Robinson's medication was changed before he was moved into Plaintiff's cell, which caused the sleepwalking. *Id.* at 54. Plaintiff also states that this was part of a plan by Defendants to house Plaintiff with unstable cell mates. *Id.* at 56.

In the pending Motion, Defendants first argue that Plaintiff's Eighth Amendment claim must be dismissed under the Prison Litigation Reform Act ("PLRA") for failure to exhaust administrative remedies. *See Motion* [#153] at 8-10; *Reply* [#164] at 6-9. Defendants also argue that Plaintiff has failed to present facts fulfilling the requirements of

---

2013. *Order* [#73] at 8. There has been no subsequent amendment of the complaint in which these claims were reinstated, and thus the only claim remaining in this case pertains to the Eighth Amendment. *Id.* The Court therefore only considers Plaintiff's Response to the extent it addresses issues relating to his Eighth Amendment claim.

[5] The Court does not go into detail regarding the summary judgment evidence submitted in connection with this portion of Plaintiff's Eighth Amendment claim because, as discussed below, the Court finds that the parties did not submit evidence that Plaintiff exhausted his administrative remedies in connection with this portion of the claim.

an Eighth Amendment claim. *See Motion* [#153] at 13-18; *Reply* [#164] at 9-13.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most

favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

In addition, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted). As such, "sweeping intervention in the management of state prisons is rarely

appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

### III. Analysis

#### A. Exhaustion of Administrative Remedies

The Court must first address Defendants' arguments concerning exhaustion of administrative remedies. *See Norton v. The City of Marietta, OK*, 432 F.3d 1145, 1149-50 (10th Cir. 2005) (stating that exhaustion is mandatory and that the issue of administrative exhaustion under the PLRA must be considered before examining the merits of the plaintiff's claims). The PLRA requires that a claim regarding prison conditions must first be exhausted before a prisoner may challenge those conditions by filing suit. *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."). Specifically, the exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). However, the burden is on Defendants to assert the failure to exhaust in a dispositive motion. Here, Defendants' failure to exhaust defense is analyzed pursuant to Fed. R. Civ. P. 56. As such, if the evidence presented does not

create a genuine issue of material fact as to whether Plaintiff's Eighth Amendment claims against Defendants were properly exhausted, the claims must be dismissed without prejudice. *Arocho v. Lappin*, No. 07-cv-02603-REB-KLM, 2011 WL 2292187, at *8 (D. Colo. Apr. 21, 2011) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (noting that dismissal of unexhausted claims on summary judgment should be without prejudice)); *cf. Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006) (recognizing that dismissal of untimely grievance should be with prejudice), *overruled in part on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008)).

The prison facility is tasked with the responsibility of establishing grievance procedures. *Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion."). Defendants argue that Plaintiff failed to exhaust his administrative remedies because he failed to file Step 3 grievances for each of the two separate events which compose his Eighth Amendment claim, as required by prison regulations concerning CDOC's grievance procedures. As evidence that he completed the grievance process, Plaintiff submitted copies of numerous grievances along with other incident statements and other forms. *See Response* [#160] at 10-22. The Court addresses each of the incidents underlying Plaintiff's Eighth Amendment claim in turn.

### 1. February 9, 2010 Incident

Defendants concede that the evidence shows that Plaintiff filed Step I and Step II grievances for the February 9, 2010 incident with Inmate Robinson. *Motion* [#153] at 6 (citing *Debs.' Ex. D* [#153-4] at 1-2). Defendants argue, though, that there is no evidence demonstrating that Plaintiff ever filed a Step III grievance, which is a prerequisite for

exhaustion of his administrative remedies. *Motion* [#153] at 6, 9-10. The Court has reviewed the grievances provided by Defendants as part of the Motion as well as the grievance forms provided by Plaintiff. *See Debs.' Ex. D* [#153-4]; *Pl.'s Response* [#160] at 10-22.

Plaintiff directs the Court's attention to a Step III response that is missing the grievance number. *Response* [#160] at 5 (citing *id.* at 15). In this grievance and its attached pages, Plaintiff discusses the events underlying the February 9, 2010 incident as well as events underlying many of his other claims. *Id.* at 15-18. This document was not signed by the grievance coordinator in order to acknowledge receipt. *Id.* at 15.

Defendants point to another grievance submitted by Plaintiff that is clearly a copy of the one Plaintiff discusses, except that this other document (1) contains a grievance number ("BC09/10-270") that connects it to the Step I and Step II grievances regarding the February 9, 2010 incident, (2) does not include copies of the pages that Plaintiff had formerly attached to the grievance, and (3) is signed by the grievance coordinator acknowledging the document's receipt. *Id.* at 10. Defendants concede that this Step III grievance labeled "BC09/10-270" "appears to be identical" to the unlabeled Step III grievance to which Plaintiff refers. *Reply* [#164] at 8 n.4. They argue, though, that the labeled document "does not deal with Plaintiff's Eighth Amendment claim at all, but rather involves Plaintiff's First Amendment claim that was previously dismissed." *Id.* Thus, they suggest that this document "was . . . labeled inadvertently" with the wrong grievance number. *Id.* Without taking into account the additional pages that Plaintiff may or may not have actually submitted with his Step III grievance, this first page alone, which consists of the grievance form itself, only refers to incidents which have been dismissed from this

-8-

lawsuit. *See Order* [#73] at 8 (dismissing Plaintiff's First and Fourteenth Amendment claim (Claim One)).

Thus, it appears that there is a fact issue regarding whether Plaintiff properly exhausted his administrative remedies regarding the February 9, 2010 incident. The documents to which Plaintiff and Defendants point do not clearly demonstrate whether Plaintiff's Step III grievance regarding this incident was properly made. Accordingly, because a fact issue exists, the Court **recommends** that Defendants' Motion seeking entry of summary judgment on the February 9, 2010 incident based on failure to exhaust administrative remedies be **denied**.

### 2. December 16, 2009 Incident

Defendants concede that the evidence shows that Plaintiff filed Step I and Step II grievances for the December 16, 2009 incident with Inmate Belcher. *Motion* [#153] at 6 (citing *Debs.' Ex. D* [#153-4]). Defendants argue, though, that there is no evidence showing that Plaintiff ever filed a Step III grievance. *Motion* [#153] at 6, 9-10. The Court has reviewed the grievances provided by Defendants as part of the Motion as well as the grievance forms provided by Plaintiff. *See Debs.' Ex. D* [#153-4]; *Pl.'s Response* [#160] at 10-22. Among these documents there is no Step III grievance form labeled with the proper grievance number ("BC09/10-209"). Accordingly, Defendants have met their initial burden of proof on this issue by demonstrating an absence of a Step III grievance. *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

Plaintiff points to the same unlabeled Step III grievance form discussed above in relation to the February 9, 2010 incident. *Response* [#160] at 5 (citing *id.* at 15). He

argues that "[t]he content refers to all the claim[s]." *Id.* at 5. However, Administrative Regulation ("AR") 850.04 IV.D.6. clearly articulates: "Each grievance shall address only one problem or complaint and include a description of the relief requested. Problems that arise from the same incident or set of facts shall be grieved in one grievance, even though it may involve multiple DOC employees, contract workers, or volunteers." Here, Plaintiff has provided no evidence demonstrating that the February 9, 2010 incident and the December 16, 2009 incident "arise from the same incident or set of facts." Further, Plaintiff received the response to his Step II grievance for the December 16, 2009 incident on January 15, 2010. *Defs.' Ex. D* [#153-4] at 3. AR 850.04 IV.F.1.d. states: "Offenders who wish to proceed to the next step in the grievance process must submit their written grievance within five calendar days of receiving the written response to the previous step." Plaintiff did not complete the indicated Step III grievance form until March 31, 2010, approximately two-and-a-half months after the regulations permitted him to proceed on that issue. *Response* [#160] at 15. Further, as noted above, the copy of the grievance form that includes a grievance number ("BC09/10-270") does not match the grievance number of Plaintiff's grievances related to the December 16, 2009 incident ("BC09/10-209"). *Id.* at 10.

Thus, it appears that there is not a fact issue regarding whether Plaintiff properly exhausted his administrative remedies regarding the December 16, 2009 incident, because the parties have provided no evidence of a Step III grievance regarding this incident. Plaintiff alternatively cites to case law that suggests he was not required to exhaust his administrative remedies. *Response* [#160] at 5. However, Plaintiff offers only vague, generalized speculation, and fails to provide anything in support of his argument in the way of specific assertions supported by competent summary judgment evidence. *See id.*

(stating that the Step II grievances "are conveniently missing," that grievances were "tampered with," and that grievances were "mysteriously disappearing"). This argument is therefore unavailing to salvage Plaintiff's claim.

Accordingly, the Court **recommends** that the portion of Plaintiff's Eighth Amendment claim regarding the December 16, 2010 incident be **dismissed without prejudice** for failure to exhaust administrative remedies. *Arocho*, 2011 WL 2292187, at *8 (noting that dismissal of unexhausted claims on summary judgment should be without prejudice).

**B.     Eighth Amendment**

The Court proceeds to examine the merits of Plaintiff's Eight Amendment cruel and unusual punishment claim regarding the February 9, 2010 incident. The Court interprets this claim to be for failure to protect through deliberate indifference. To succeed on an Eighth Amendment claim for failure to protect, a plaintiff must demonstrate that objectively, he is incarcerated under conditions that pose a substantial risk of serious harm, and that subjectively, prison officials were deliberately indifferent to his safety. *See, e.g.*, *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006). "Mere negligence does not constitute deliberate indifference; deliberate indifference is equivalent to recklessness in this context." *Id.* (quoting *Verdicia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)). Thus, "the official must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996).

Under the objective prong of the Eighth Amendment deliberate indifference test, the Court must first consider whether the conditions of incarceration complained of are

"sufficiently serious," i.e., whether the "conditions pos[e] a substantial risk of serious harm." *Id.* at 1205. Plaintiff provided deposition testimony that Inmate Robinson urinated on boxes next Plaintiff's bed, that he did not urinate on Plaintiff, that this type of incident only happened once, that Plaintiff suffered no physical injury, and that he was never hospitalized as a result of this incident. *See generally Debs.' Ex. A, Depo. of Pl.* [#153-1] 51-69. Based on Plaintiff's own testimony, and in the absence of any genuine issue of material fact, the Court finds that Plaintiff has failed to meet the objective prong of the Eighth Amendment deliberate indifference test because he has failed to demonstrate that the single incident of nighttime urination by his cell mate posed a substantial risk of serious harm to him.

Accordingly, the Court **recommends** that summary judgment enter in favor of Defendants and against Plaintiff on the portion of Plaintiff's Eighth Amendment claim (Claim Two) regarding the February 9, 2010 incident.

## IV. Conclusion

Based on the foregoing,

IT IS RESPECTFULLY **RECOMMENDED** that the Motion [#153] be **GRANTED**, and that the portion of Plaintiff's Eighth Amendment claim regarding the December 16, 2010 incident be **dismissed without prejudice** for failure to exhaust administrative remedies and that **summary judgment enter in favor of Defendants** and against Plaintiff with respect to the portion of Plaintiff's Eighth Amendment claim regarding the February 9, 2010 incident.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written

objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated April 4, 2014, at Denver, Colorado.

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge